JOHN B. ZANONE

*v.*

MOUND CITY.

*Filed at Ottawa May 12, 1882—Rehearing denied September Term, 1882.*

1. LICENSE—*to keep a dram-shop—arbitrary discrimination as to persons.* Under a general ordinance of a city for licensing dram-shops, the city authorities have no right to make an arbitrary discrimination in granting licenses. They can not grant the same to a favored few and refuse it to another who has in all respects complied with the ordinance and laws of the State, and who is admitted to be in every respect a suitable person.

2. The business of dealing in liquor is recognized by the constitution as a legitimate business, and a license to keep a grocery or dram-shop is placed in the same category with licenses to carry on any other lawful business, and it must be dealt with according to law, and special privileges are not to be granted to particular persons.

3. SAME—*extent of limitation—and in what manner to be prescribed.* The court is not prepared to decide that municipal authorities may not refuse a license to persons of such habits and character as render them unfit persons to be licensed, or that they may not limit the number of dram-shop keepers to be licensed; but this must be done, if at all, by ordinance, and it would seem that in such a case, to avoid favoritism and monopoly, some provision should be made for a fair competition among suitable persons seeking such privileges.

4. SAME—*when the granting will be compelled by mandamus.* Any one who has brought himself strictly within the requirements regulating the licensing power, may compel by *mandamus* the corporate authorities to grant him a license when it is refused through mere caprice.

5. MUNICIPAL CORPORATIONS—*of their powers, and in what manner to be exercised.* Municipal corporations are mere creatures of the legislative will, and can exercise no powers except such as the State has conferred on them. All powers they possess are held by them in trust for the people of the municipality, and for the public generally. Their governmental and administrative powers, other than those conferred by statutory or constitutional enactment, which are self-executing, can only be exercised by appropriate ordinances.

6. ORDINANCES—*of their requisites.* Ordinances must be general in their character, and operate equally upon all persons within the municipality of the same class to whom they relate; they must not be in violation of any law, contrary to public policy, or unnecessarily oppressive, and must not unjustly and arbitrarily discriminate between citizens of the same class.

This is an original application in this court by John B. Zanone, against the authorities of Mound City, to compel them to grant him a license to keep a dram-shop within the city. The respondents demurred to the petition.

Messrs. MULKEY & LEEK, for the relator:

The petition shows everything necessary to entitle the relator to the relief sought, and this is admitted by the demurrer. The power of the city to grant the license is expressly given, and it can not be pretended that the act sought to be enforced is in itself unlawful. The power of the

city to license has been carried into effect by a general ordinance. *People ex rel. Besse* v. *Village of Crotty,* 93 Ill. 180.

The ordinances of such corporations must be reasonable, and such as are vexatious, unequal or oppressive, are void. *City of Chicago* v. *Rumpff,* 45 Ill. 96.

Any suitable person bringing himself within the requirements of an ordinance for licensing a calling, will be entitled to have a license, and it can not arbitrarily be refused to him and granted to others. *City of East St. Louis* v. *Wehrung,* 50 Ill. 32. See, also, *People ex rel. Besse* v. *Village of Crotty,* 93 Ill. 180, and *Prather et al.* v. *People,* 85 id. 36.

Mr. SAMUEL P. WHEELER, for the respondents:

The ordinance of the city provides that no license shall be issued by the clerk until the application for the same shall have been presented to and approved by the city council, and an order made for the issuing of the same. Without this ordinance the relator could not be licensed at all. *People* v. *Village of Crotty,* 93 Ill. 180.

A license is a privilege which may be granted or denied. Had the ordinance been general in its terms, giving to any one the privilege, upon paying a certain sum and giving a bond, making the issuance of the license a mere ministerial act, the case would be different, and a *mandamus* might be awarded, as intimated in *Kadgihn* v. *City of Bloomington,* 58 Ill. 229.

The city council has complete control of this matter. They may refuse any and all licenses, or may grant licenses for the sale of wine and beer only, or in quantities of one gallon and over, or may license on particular streets. This discretion being vested in them, it will not be taken from them by the courts. The exercise of such discretion by the council is final, and not subject to review.

The courts have always held that where the performance of a duty is discretionary, *mandamus* to compel such per-

formance will not lie. The first step towards obtaining a license, is an application to the city council. This is not a mere matter of form, and to be granted of course. It means something more.

Mr. JUSTICE DICKEY delivered the opinion of the Court:

This is an application for a *mandamus* from this court, sought by John B. Zanone, a resident of Mound City, against the municipal authorities of that city, to compel them to issue to him a license to keep a dram-shop within the corporate limits of the city. The case is submitted for final decision upon a demurrer to the petition.

It is charged in the petition, and confessed by the demurrer, that Mound City is organized under the general law of 1872, for the incorporation of cities and villages; that prior to this proceeding the city council passed a general ordinance providing for the issue of licenses to keep dram-shops within the city, upon certain conditions set out in the ordinance; that the petitioner, in strict conformity with all the conditions and requirements of the ordinance, made application for such license, tendering to the city clerk, the proper officer, the license fees fixed by the ordinance, and also a good and sufficient bond, as provided by the 5th section of the Dram-shop act—both of which were refused without any reason being assigned therefor, and that the application for license was denied; that about the time of, and both before and after, his application, the respondents issued licenses to a number of other applicants to keep dram-shops in the same block of the city in which was the location where petitioner proposed, in his application, to keep one. It is also, in the same manner, alleged in the petition and confessed by the demurrer, that the petitioner is *in every respect a suitable person to be licensed* to carry on such business, and that he is the only person whose application for such a license has ever been refused by the municipal authorities. In short, the

record shows a clear and unequivocal case of *arbitrary* discrimination on the part of the defendants against the petitioner. No excuse, justification or explanation is shown or offered by defendants for their action in this regard.

It is claimed by counsel for defendants that the city council, as a matter of law, has the right to exercise this arbitrary discrimination in the matter of granting licenses. No authority has been cited which sustains this position, and we have found none. To so hold would be a departure from some important fundamental principles which underlie municipal government, as framed under our constitution and laws. Municipal corporations are mere creatures of the legislative will, and can exercise no powers except such as the State has conferred upon them. All powers they possess are held by them in trust for the people of the municipality, and for the public generally. Their governmental and administrative powers (other than those conferred by statutory or constitutional enactments, which are self-executing,) can only be exercised by appropriate ordinances. Such ordinances must be general in their character, and operate equally upon all persons within the municipality, of the class to which the ordinance relates. Such ordinances must not be in violation of law, contrary to public policy, or unnecessarily oppressive, and must not unjustly or arbitrarily discriminate between citizens of the same class. These views are not new. On this subject this court has said: "All by-laws should be general in their operation, and should bear equally upon all the inhabitants of the municipality. Where privileges are granted by an ordinance, they should be open to the enjoyment of all upon the same terms and conditions." (*City of Chicago* v. *Rumpff*, 45 Ill. 97.) The business of dealing in liquors is recognized by the constitution as a legitimate business, and license to keep a grocery or dram-shop is placed in the same category with license to carry on the business of a merchant, in cases where a merchant may lawfully be required

to take out a license. So long as the law recognizes the business of keeping a dram-shop as a legitimate business, that business must be dealt with according to law, and special privileges are to be granted to the favored few in that business no more than in any other lawful business, whatever may be the private feelings or views of judges or other public officers. Whether a license be that of a merchant, a peddler, or a keeper of a dram-shop, it confers a privilege upon the citizen for which the law requires a fixed compensation to be paid, and the privilege must be open alike to all citizens of the municipality in and on like conditions.

The case of the *City of East St. Louis* v. *Wehrung*, 46 Ill. 392, recognizes the principle that the licensing power can only be exercised through general ordinances operating uniformly upon all persons in like conditions. The case of *East St. Louis* v. *Wider*, 46 Ill. 351, decides, expressly, that *mandamus* is the proper remedy where an applicant has brought himself within the provisions of such an ordinance, and the municipal authorities refuse the license.

The *Wehrung case, supra,* was an action for a penalty imposed by an ordinance for selling intoxicating liquors without a license. The ordinance was held invalid because it authorized the city treasurer to fix the amount of the license fee to be required of each applicant, and also permitted him, with the concurrence of the mayor, to reject arbitrarily any application he might think proper. It was held that the municipal authorities could not delegate their powers, and also that the discrimination provided for could not be lawfully exercised by the corporate authorities. If an ordinance providing for such arbitrary discrimination be void for that cause, it can not be lawful for the municipal authorities to accomplish the same end by indirection, by conforming to the law in making the ordinance general on its face, and at the same time defeating the requirements of law by the mode of carrying the ordinance into effect.

The doctrine that any one who has brought himself strictly within the requirements regulating the licensing power may compel, by *mandamus*, the corporate authorities to grant him a license where it is refused through mere caprice, is recognized, either expressly or by necessary implication, in all the cases bearing upon this subject to which our attention has been called. In the case of *The People* v. *The Village of Crotty*, 93 Ill. 180, an application for a *mandamus* to compel the village authorities to issue a dram-shop license was denied, under the circumstances of that case, because no bond was tendered, and no ordinance providing for license was shown; but the right to the writ was fully recognized, in cases of this character, where a general ordinance has been passed, and where the applicant has clearly brought himself within the provisions of the ordinance and of the law. Viewed in a legal aspect, in the light of the decisions of this court, no distinction can be perceived in this regard between applications for a merchant's or a peddler's license and applications for license to keep a dram-shop.

Equality before the law is a fundamental principle of our institutions, and no reason is perceived why applicants for license to keep a dram-shop, who are suitable persons to be licensed, should not stand on an equality before the law. Captious discriminations among men of that trade are as obnoxious as would be such discriminations in regard to other trades. Were this an application, under like circumstances, for a license to peddle, or to carry on the business of a merchant, could there be any doubt about the right of the applicant? It is claimed that municipal authorities may exercise a discretion in such matters. We do not decide that they may not refuse license to persons of such habits and character as render them unfit persons to be licensed. In this case the authorities had not decided that the applicant was not a fit man to be licensed. On this record it stands confessed that the applicant is a suitable person to be

licensed. We do not decide that the municipal authorities may not limit the number of dram-shop keepers to be licensed, but this must be done, if at all, by ordinance. And it would seem that in such case, to avoid favoritism and monopoly, some provision should be made for a fair competition among suitable persons seeking such privileges.

Being of opinion that the record shows a clear right in the relator, the peremptory writ sought by the petition is ordered to be issued.

*Writ allowed.*

Mr. JUSTICE SCOTT: I dissent *in toto* from this opinion.

Mr. JUSTICE WALKER: I do not concur in this judgment.

Mr. JUSTICE SHELDON also dissents.